UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DMYTRO ADAMOV,<br>Petitioner,<br>v.<br>BRUCE SCOTT et al.,<br>Respondents. | CASE NO. 2:26-cv-02099-DGE<br><br>ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

This matter comes before the Court on Petitioner Dmytro Adamov's petition for writ of habeas corpus. (Dkt. No. 1.) Having reviewed the petition, the response memorandum (Dkt. No. 6), and the traverse (Dkt. No. 9), the Court DENIES the petition.

## I BACKGROUND

Petitioner is a native and citizen of Ukraine. (Dkt. No. 8-1 at 2.) Petitioner first entered the United States on December 1, 2022 at the Seattle-Tacoma International Airport. (*Id*. at 4.) Petitioner was paroled into the United States through the Uniting for Ukraine (U4U) program. (*Id.*) Petitioner's parole was "slated to end on 11/29/2026." (*Id.*; *see also* Dkt. No. 7 at 2.) On

March 7, 2024, Petitioner filed a Form I-821, Application for Temporary Protected Status with United States Citizenship & Immigration Services ("USCIS"). (Dkt. No. 7 at 2.) On November 8, 2025, Petitioner filed an application for relief from removal. (*Id.*) Both the Form I-821 and application for relief from removal were still pending with USCIS as of June 30, 2026. (*Id.*) Petitioner's mother is a U.S. citizen but "[n]o immigrant visa petitions have been filed." (Dkt. No. 8-1 at 4.)

Petitioner has been arrested three times: first, in April 2023 for fourth-degree assault; second, in April 2026 for driving under the influence; and third, in April 2026 for obstructing a law enforcement officer and resisting arrest. (*Id.* at 3.) "No convictions were found" as of May 13, 2026 (*id.*) but at least the first two charges appear to be pending (Dkt. No. 7 at 2). Petitioner was also served a temporary protection order on May 1, 2026 requiring him to remain 1,000 feet away from his wife and child. (Dkt. No. 8-1 at 3.)

USCIS issued a Request for Evidence on February 9, 2026 related to his 2023 arrest for assault. (*Id.* at 4.) The request "state[d] USCIS must receive a response by 05/07/2026. That deadline has since passed, and it does not appear as if a response has been given." (*Id.*) However, "USCIS has not yet formally sent a denial notice of the application." (*Id.*)

On May 13, 2026, Petitioner crossed the border to Canada. (*Id.* at 3.)[1] Petitioner asserts he "did not intend to unlawfully enter Canada or violate U.S. immigration laws," "did not fully understand that [he] was near a restricted border area," and "was not feeling well physically"

[1] It is not entirely clear how Petitioner left the United States and entered Canada. He asserts his car remained in the United States (Dkt. No. 1 at 9) while Respondents assert he "drove his own vehicle to Canada" (Dkt. No. 8-1 at 3).

when he left the United States and entered Canada. (Dkt. No. 1 at 9.)[2] Respondents identify that Petitioner "appeared to be under the influence of something unknown" when he crossed the Canadian border. (Dkt. No. 8-1 at 3.)

Petitioner was "escorted back" to the United States and placed in a Canada Border Services Agency vehicle. (*Id.*) At one point, Petitioner "had to be picked up off the floor" by a border patrol officer "and escorted to the processing center." (*Id.*) A search of Petitioner's vehicle "revealed a green leafy substance" that "tested positive for marijuana, and was seized, weighing 7.9 grams." (*Id.*)

Petitioner was presented at the Peach Arch Port of Entry in Blaine, Washington after being escorted back by Canadian border officials. (Dkt. No. 7 at 3.) At that time, the Chief Customs Border Patrol Officer determined that based on Petitioner's "criminal arrests, protection order, possession of controlled substances, and misrepresentation made on an application for an immigration benefit," "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." (Dkt. No. 8-1 at 4.) Petitioner was then deemed to be "an arriving alien applying for admission" and was found inadmissible pursuant to section 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), of the Immigration and Nationality Act ("INA"). (*Id.*)

Petitioner was issued a Notice to Appear pursuant to section 240 of the INA, codified at 8 U.S.C. § 1229a. (Dkt. No. 8-2 at 2.) The Notice to Appear identified Petitioner as an "arriving

---

[2] Petitioner identifies that he was on "strong pain medication at the time of the incident." (*Id.* at 9.) It appears that Petitioner saw providers in March, April, and May 2026 and had been prescribed acetaminophen (Tylenol) and ibuprofen. (*Id.* at 17–19.) Petitioner also identifies that he had not slept for two days prior to the incident and was suffering from severe headaches. (Dkt. No. 9 at 19.)

alien" and stated his "parole is being terminated as it appears neither humanitarian reasons nor public benefit warrants [his] continued presence in the United States." (*Id.*) USCIS also issued a warrant for Petitioner's arrest and detained Petitioner. (Dkt. No. 8-3.) Petitioner has been detained at Northwest Immigration & Customs Processing Center ("NWIPC") since May 13, 2026.

Petitioner's petition is sparse but identifies that he is challenging his "[c]ontinued immigration detention pending removal proceedings" and asserts that he "was not given a proper notice or warrant or neutral decision maker before [he] was taken into custody." (Dkt. No. 1 at 2, 6.) He also identifies that his "physical and mental health ha[ve] deteriorated while in detention." (*Id*. at 7.)

Respondents respond that Petitioner's detention is statutorily authorized under 8 U.S.C. § 1225(b) following the lawful termination of his humanitarian parole. (Dkt. No. 6 at 5.) Respondents assert parole "terminates automatically and without written notice upon [a parolee's] departure from the United States." (*Id.*) Separately, Respondents assert that "U.S. Customs and Border Protection also properly terminated Petitioner's parole under the discretionary authority of 8 C.F.R. § 212.5(e)(2)(i). (*Id.*)

Petitioner's traverse seeks to "demonstrate that material facts remain genuinely disputed, that the Government's legal conclusions do not automatically follow from its version of events, and that [his] continued detention violates the Due Process Clause of the Fifth Amendment." (Dkt. No. 9 at 2.)

## II LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To

succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III ANALYSIS

### A. Petitioner's parole was terminated on May 13, 2026

It is undisputed that the United States Department of Homeland Security ("DHS") paroled Petitioner into the United States in December 2022. (Dkt. No. 8-1 at 4.) 8 U.S.C. § 1182 provides that the Secretary of Homeland Security may, in their discretion, parole a noncitizen seeking admission into the United States under such conditions as they may prescribe "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]" *Id*.

Parole may be terminated either automatically or with notice. *See* 8 C.F.R. § 212.5(e). Parole is *automatically* terminated without written notice "upon the departure from the United States of the [noncitizen]." 8 C.F.R. § 212.5(e)(1)(i). To *revoke* parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority

must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i). A Notice to Appear "will constitute written notice of termination of parole, unless otherwise specified." *Id.* In such circumstance, the noncitizen "shall be restored to the status that he or she had at the time of parole." *Id.*

Respondents argue that Petitioner's parole was terminated automatically pursuant to 8 C.F.R. § 212.5(e)(1)(i) because Petitioner—even if only accidentally and briefly—left the United States. (See Dkt. Nos. 1 at 6, 6 at 5, 8-1 at 3.) Furthermore, Respondents argue that Petitioner's parole was revoked under 8 C.F.R. § 212.5(e)(2)(i) because the Chief Border Patrol Officer, an authorized individual under 8 C.F.R. § 212.5(a), made a finding that "neither humanitarian reasons nor public benefit" warrants the continued presence of Petitioner in the United States and provided Petitioner with written notice of the termination of his parole. (*See* Dkt. Nos. 6 at 5–6, 8-1 at 4; 8-2 at 2.)

First, pursuant to 8 C.F.R. § 212.5(e)(1)(i), Petitioner's parole was automatically revoked when he left the United States and entered Canada. At various points, Petitioner appears to challenge Respondents' argument that he left the United States. (*See* Dkt. No. 9 at 15.) However, Petitioner concedes he encountered Canadian officers and informed them he "wanted to return to the United States." (Dkt. No. 9 at 19.) Petitioner does not explain how he would have encountered Canadian officials or why he would have stated he wanted to return to the United States if he had not crossed the border and entered Canada. Thus, while Petitioner may have only briefly or even accidentally entered Canada, it appears undisputed that he was briefly outside the United States.

Separately, even if Petitioner had remained in the United States, Respondents argue that his parole was lawfully terminated under 8 C.F.R. § 212.5(e)(2)(i) when the Chief Border Patrol Officer made a finding that "neither humanitarian reasons nor public benefit" warrants the continued presence of Petitioner in the United States and provided Petitioner with written notice of the termination of his parole, in this case a Notice to Appear. Petitioner does not respond to this argument.

Accordingly, the Court concludes Petitioner's parole was revoked on May 13, 2026 and Petitioner was properly served a Notice to Appear identifying him as an arriving alien and charging him as removable under section § 212(a)(7)(A)(i)(I) of the INA. (Dkt. No. 8-2 at 2, 5.)

**B. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)**

Section 1225 applies to "applicants for admission" to the United States, who are defined as noncitizens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. On the other hand, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings*, 583 U.S. at 287. Persons falling within § 1225(b) are subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B) *and* § 1225(b)(2)(A).

As identified *supra*, Petitioner's parole was terminated on May 13, 2026 after having left the United States. He was detained at entry into the United States, charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placed in removal proceedings. (Dkt. No. 8-2 at 2, 5.) Based on the facts presented, Petitioner arrived to the United States on May 13, 2026 and was subject to

§ 1225(b)(1) and its mandatory detention provision. Accordingly, his current detention does not violate the Due Process Clause.

**C. Petitioner identifies no other basis for his release**

Petitioner also makes a vague assertion that his "physical and mental health ha[ve] deteriorated while in detention." (Dkt. No. 1 at 7.) He asserts he previously "suffered injuries to [his] head, spine, and back" and "[s]ince being held in immigration detention, [his] physical and psychological condition has worsened. Continuing detention is causing additional hardship to [his] health and well-being." (*Id.*) Petitioner's mother further asserts Petitioner "look[s] much worse" both physically and emotionally in detention than he did prior to his detention. (*Id*. at 22.) She reports that when she visited Petitioner at NWIPC, Petitioner "complained of severe pain in his head, back, and arm" and that she "noticed swelling in the upper part of his spine, which appeared to increase during the time of [her] visit." (*Id.*)

However, Petitioner does not identify what care he requires, in what ways Respondents' care has been inadequate, or whether he has communicated any needs to Respondents. Accordingly, the Court finds Petitioner has not stated sufficient facts to grant release based on inadequate medical care. *Compare Iullo v. Field Office Director, U.S. Immigration and Customs Enforcement*, NO. C26-1579-KKE, 2026 WL 1959142, at *3 (W.D. Wash. July 7, 2026) (denying habeas where Petitioner did not raise medical concerns to Respondents) *with Sorio v. Hermosillo*, NO. 2:25-cv-02492-TL, 2026 WL 413530, at *9 (W.D. Wash. Feb. 13, 2026) (finding that the "conditions of Petitioner's detention, specifically his medical care or denial of medical care, were intended to punish him, or were excessive in relation to a legitimate non-punitive purpose served by his detention").

**D. Remaining arguments**

Petitioner offers information about his ties to the United States and his pending applications for Temporary Protected Status and asylum. (Dkt. Nos. 1 at 9; 9 at 20.) However, these facts are not relevant to whether Petitioner left the United States on May 13, 2026 or whether Respondents lawfully detained him upon returning to the United States.

**IV ORDER**

For the reasons identified herein, Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is DENIED without prejudice. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address. This matter is closed.

Dated this 24th day of July, 2026.

David G. Estudillo
United States District Judge